

U.S. Department of Justice

United States Attorney
Eastern District of New York

JJD:JLG
F. #2020R00632

610 Federal Plaza
Central Islip, New York 11722

November 22, 2024

By ECF

The Honorable Joan M. Azrack
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. Cesar Humberto Lopez-Larios
                Criminal Docket No. 20-577 (JMA)

Dear Judge Azrack:

      We write on behalf of the Government in the above captioned matter, as directed by the Court during the November 13, 2024 conference, regarding the defendant's housing conditions. Following that conference, on November 18, 2024, the government received an email from defense counsel, containing a number of specific requests and inquiries; and, after conferring with the Supervisory Attorney at the Metropolitan Detention Center ("MDC"), we respectfully respond as follows:

      1.    Regarding the defendant's complaints about being housed in the Special Housing Unit ("SHU") at MDC, the government has conferred with the United States Marshals Service ("USMS") and the Bureau of Prisons ("BOP"), who determine security designations and housing assignments, and both the USMS and BOP have determined that the defendant's SHU assignment is necessary for safety reasons. As the government has previously set forth during multiple court appearances and letters in connection with the related matter of United States v. Arevalo-Chavez, et al., 22-CR-429 (JMA), this defendant and the other high-ranking MS-13 leaders charged in this case and in Arevalo-Chavez must be housed in the SHU for their own safety, due to specific and credible threats from both another faction of MS-13, their own transnational criminal organization, and other rival criminal organizations, including the Mexican Mafia and Surenos. Therefore, the BOP is unable to house the defendant in general population at MDC because it would jeopardize both the defendant's safety and the safety of the institution as a whole. Moreover, moving the defendant to general population at any of the local county facilities the USMS uses to house pre-sentence defendants would not resolve these

problems because the defendant would have the same (if not greater) security issues in those facilities, which all presently house numerous members of MS-13 and rival criminal organizations.

2.  Counsel requests that the defendant be permitted the same access to "telephone, email, watch television in a common room, … recreation including team sports, educational classes, religious observance and employment," as inmates housed in general population.

The defendant, in fact, has access to the telephone.  With respect to the number of personal phone calls the defendant is able to make, although inmates housed in SHU are typically permitted two phones call per month, because this defendant is housed in SHU due to separations (as opposed to disciplinary infractions), he is permitted to make one personal phone call per week.

The defendant also has email access, specifically, at the discovery computers in the law library.  As noted further herein, in order to access the discovery computer and thereby have access to email, he need only make the request to a staff member.

Regarding the request to watch television in the common room, that cannot be accommodated.  However, as noted below, the defendant is permitted to have a radio, which he may purchase from the commissary.

Regarding religious observance, although he is not permitted to congregate for service, religious officials in fact make rounds at the SHU for observant inmates.

Finally, regarding employment, there are certain jobs that SHU inmates may hold.  However, the waitlists for any employment at the facility – including employment for inmates housed in general population – is long, and not every inmate who wants a job can simply have one.  Inmates are not entitled to employment as a matter of right.

3.  Counsel demands that the defendant have more time out of his cell. This is an accommodation that cannot be made.

4.  Counsel contends that "[w]hen he is in his cell, he has nothing to do. He should be given access to a radio and books in Spanish."  As noted above, the defendant is permitted to have a radio, which he can purchase from the commissary.  Moreover, he already has access to Spanish-language books, which are on the book cart for his use. Additionally, counsel can send books and reading materials directly to the defendant from Amazon or Barnes & Noble.

5.  Counsel states that the defendant will not have access to the law library to review his discovery.  That is false.  The defendant, in fact, has access to a law library computer.  In order to access the discovery computer, he need only make the request to a staff member.

6.      Finally, counsel requests that the defendant "should be given access to the full list of commissary items, not just the ones for inmates in the SHU who have a restricted list for disciplinary reasons." With respect to the defendant's access to commissary, counsel is correct that commissary available to inmates housed in SHU is more limited than commissary available to inmates housed in general population, due to safety, security, and sanitation reasons. The government has recently worked with MDC to expand the list of commissary options available to inmates housed in SHU. Counsel further requests that, "since [the defendant] can't have a job and his family can't send him money … [h]e should be given credit to buy items from the commissary." Nothing about his placement in SHU prevents his family members from adding funds to his commissary account. This request for credit will not be accommodated.

The undersigned Government counsel are available if the Court has any further questions or concerns.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/ Justina L. Geraci
John J. Durham
Justina L. Geraci
Paul G. Scotti
Assistant U.S. Attorneys
(631) 715-7900

cc:    Jeffrey G. Pittell, Esq.